UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TU D.H.,

           Petitioner,

      v.

CHRISTOPHER CHESTNUT, et al.,

           Respondents.

No. 1:26-cv-00539-TLN-JDP

**ORDER**

This matter is before the Court on Petitioner Tu D.H.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) For the reasons set forth below, the Court GRANTS Petitioner's Petition.

///

///

///

_____

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

### I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF No. 1.) Petitioner is a citizen of Vietnam who has resided in the United States since August 24, 2023. (ECF No. 4-1 at 7.)  Petitioner fears returning to Vietnam because he has suffered past persecution on account of his political opinion and membership in a particular social group.  (*Id.*)

The U.S. Department of Homeland Security ("DHS") placed Petitioner in removal proceedings before the immigration court pursuant to 8 U.S.C. § 1229a.  (*Id.*)  On December 2, 2025, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") officers during a routine appointment that he consistently attended.  (*Id.*)

On January 22, 2026, Petitioner filed a Petition for Writ of Habeas Corpus, challenging the lawfulness of his civil detention and seeking release. (ECF No. 1.)  On January 26, 2026, the Court granted Petitioner's Motion for a Temporary Restraining Order ("TRO") and ordered Respondents to show cause why the Petition should not be granted.  (ECF No. 6.)  On February 2, 2026, Respondents filed a response to the order to show cause and motion to dismiss the Petition. (ECF No. 8 at 1.)  Petitioner did not file a reply.  The Court therefore considers the Petition on its merits.

### II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a

---

[2]    The following factual background is taken largely verbatim from Petitioner's brief in support of his motion for temporary restraining order.  (ECF No. 4-1.)

district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.   ANALYSIS

In his Petition for Writ of Habeas Corpus, Petitioner claims he is being unlawfully subjected to mandatory detention in violation of the Immigration and Nationality Act ("INA") and due process.[3]  (*See* ECF No. 1.)  In response, Respondents contend Petitioner is an "applicant for admission" who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (ECF No. 8 at 2–3.)  The Court discusses each of Petitioner's claims in turn.

#### A.   Violation of the INA

Under the INA, 8 U.S.C. § 1226(a) ("§ 1226(a)") "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the Government has broad discretion whether to release or detain the individual.  *Id.*  Further, § 1226(a) provides several layers of review for an initial custody determination.  *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  *Id.* at 1202.  Conversely, § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.

This Court agrees with Petitioner that the text and legislative history of the INA demonstrates that § 1226(a) governs his detention, not § 1225, and he is entitled to the process § 1226(a) requires, including a bond hearing.  (ECF No. 4-1 at 15–22.)  This Court and many others have repeatedly found that § 1225(b) applies only to noncitizens "seeking admission" — a category that does not include noncitizens like Petitioner who were detained within the United States.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3

---

[3]   Petitioner also asserts claims for a violation of his substantive due process rights and a violation of the Administrative Procedure Act, 5 U.S.C. § 706.  (ECF No. 1 at 19–21.)  The Court finds it need not address Petitioner's additional claims to rule on the Petition, as this claim seeks the same relief Petitioner seeks in his INA and procedural due process claims.

3

(E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position).  To reiterate, absent a higher court order holding otherwise, this Court finds Petitioner is not an applicant "seeking admission" subject to mandatory detention under § 1225(b) and therefore disagrees with Respondents (*see* ECF No. 8 at 2).  Petitioner is instead subject to § 1226(a) and is therefore entitled to the process that statute requires, including a bond hearing at a minimum.  Yet, Respondents have not provided any hearing to Petitioner either pre- or post-detention.  The Court accordingly finds Respondents violated Petitioner's statutory rights under the INA.

B.      Violation of Procedural Due Process

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

i.      Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)).  "Accordingly, a

4

noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court agrees with Petitioner that he gained a liberty interest after he was previously released. (ECF No. 4-1 at 7, 11–12.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his asylum proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

ii.  *Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Respondents violated Petitioner's due process rights.

First, Petitioner has a substantial private interest in remaining free from detention. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner asserts he has resided in the United States since May 5, 2023, and he also notes

5

that without relief, he faces the prospect of months or even years in immigration custody separated from his family and community. (ECF No. 4-1 at 12–13.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Petitioner maintains that he has not been a hearing before a neutral adjudicator to determine whether detention serves a permissible purpose, i.e., preventing danger or flight risk. (ECF No. 4-1 at 13–14); *see also Manzanarez*, 2025 WL 3247258, at *4 (quoting *A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.")). Thus, the Court finds Petitioner was likely erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." (cleaned up)).

The cost and time of procedural safeguards are minimal here. Petitioner notes that providing him with a hearing to determine whether there is evidence that he poses any risk of flight or danger to the community imposes a de minimis, if any, burden on the government. (ECF No. 4-1 at 14.) Notice and custody determination hearings are routine processes for Respondents.

Indeed, these are the very processes owed to Petitioner under 8 U.S.C. § 1226(a), which Petitioner contends applies to him.  (ECF No. 4-1 at 21.)  Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal.  Moreover, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum application than to continue to detain him.  *See also Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Here — where Petitioner has substantially complied with the conditions of his release and there is no final order of removal — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.  Further, Respondents have not provided any substantive opposition to the contrary.  (*See* ECF No. 8.)

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted.  Respondents did not provide either.  Moreover, Respondents did  not provide a post-deprivation opportunity to be heard.  The Court accordingly finds Respondents violated Petitioner's procedural due process rights.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus (ECF No. 1) and DENIES Respondents' Motion to Dismiss (ECF No. 8).  Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a

significant likelihood of Petitioner's removal in the reasonably foreseeable future; or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: February 11, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE